Renaissance Group and Mr. Hartman and Ms. Nichols, whenever you're ready. Thank you very much Eric. May it please your court, I'm Carl Hartman representing the Appellant, St. Croix Renaissance Group, LLP. Do you wish to reserve any time for rebuttal? Yes, your honor. May I reserve three minutes, please? That's fine. At the outset, and I'm going to ask both counsel, if you would address, there is a conceivable tension between the purpose of this statute, which is to have the federal courts being able to be involved with certain types of cases, but not in-state cases. It's called the, as you know, the in-state exception. And one could make an argument on that, that St. Croix is, the island of St. Croix is about as in-state as it could conceivably get, versus the text of the statute, which talks about accident or occurrence, and you have two items here. You've got the bauxite, or the red dust, red mud, and you also have the friable asbestos. And one could argue that it's hard to say that textually, that those are a single accident or occurrence. Perhaps you can make that argument, but that's where we, we see the tension here, if you could address that at some point. If I understand the court, the question is whether the statute has some sort of hidden, subtext, which requires a deference beyond what's in the plain language to localized, what, what opposing counsels call local. And just, and just to clarify, the plain language is event or occurrence, right? Yeah, event or occurrence, I'm sorry, I said accident or occurrence, excuse me, it's event or occurrence. Yes. Well, Your Honor, I believe that to get into the entire issue of the, the intent of CAFA, and what it really does, it doesn't mean beyond what's actually on the face of the, the language is, as Judge Smith said in Morgan v. Gave, a tricky maneuver, because there were so many intents going on. It was really tricky there, because they didn't say what they meant, but that's, that issue's been taken care of. I, I think so. In the one Morgan v. Gave. I wouldn't mind if we went a little further in taking care of the, the issue of what the, what the legislative history supposedly says with regard to this. I, I believe that the idea that there's some sort of special operational interest beyond the language isn't upheld anywhere in the, in the history of the statute. All right, so you're putting all of your eggs in the event basket, is that right? Or, do I read you as putting just about all of your eggs in the article and basket? No, Your Honor, I'd say that I'm, I'm really putting all my eggs in the, plaintiffs have the burden and they haven't met the burden basket. I, I don't think the case really gets too much beyond that, because there's no record here that suggests anything that would prove either event or occurrence. There's just, they have the burden, they made no record with regard to the burden. Well, I mean, this is statutory interpretation. That's right, Your Honor. And if it's a statutory interpretation, you've got to help us as much as she does. Okay, so, so back at the, an event issue, the, the only thing that suggests legislative history here that's beyond what's absolutely apparent. Are you going to legislative history now and just jumping over the textual arguments to be made? Well, I, I thought that Judge Ambrose. I'm sorry, you're still addressing Judge Ambrose. Yeah, I'm sorry. I apologize. The, the question that was asked was whether I thought there was some sort of language here that, that restricted the first exception to CAFMS actions down below what's actually in the language in the answers. The short answer is no, I don't. From your perspective, it is clear that the purpose of the statute is to try to deal with matters that go across state lines and that cuts against the plaintiff's position. But you have a statute which has been oft criticized that has a provision that says that it does not apply or does not include any civil action in which, quote, all the claims in the action arise from an event or occurrence in the state in which the action was filed. That's correct, Your Honor. So the question here is, is an event or occurrence limited to like a, you know, Three Mile Island type of thing? Can it exist if it's continuous? Can it still be an event or occurrence? I mean, one could argue that the Civil War, I think so, I mean, was an event with, you know, with a whole lot of different occurrences perhaps. But we're trying to make some sense out of the language here. We need your help. Okay. I would say this about it. You're, in the 2005, what I really want to do is answer that by giving some of the legislative history, if I might. Why are you turning to the legislative history without addressing the text of the statute? Well, the text of the statute is. We both asked you about an event or occurrence. What does event mean? I mean, shouldn't the starting point be that inquiry? Because that's what the district court, in his opinion, defined. I agree, Your Honor. I just, I don't think the statute could be any clearer in terms of what an event means. Every single. You think it is clear. Every single case that has interpreted this statute has held that an event means a single thing unless it has environmental tort somewhere near it. All of the other cases call an event an event. It defines it as singular. It defines it as not continuing. The only time you get into this whole idea of a continuing tort in the Restatement 161 is when you get near this environmental tort issue. But there's nothing in the text of the statute that sets out environmental tort. Absolutely not. That can be found somewhere in the legislative history. But not in the text of the statute. That's correct. Now, but what I want to know is, if we do focus on the text, certainly in common parlance, and that's what we're required to look to and to reference, isn't the term event frequently used to describe events that are not as temporally limited as you're suggesting? I asked a law clerk to go online and reference event. Recently, news stories. March Madness is somewhere referred to as an event. It's not a discrete game or even a half of a game. After Georgetown lost, I didn't care. You picked the wrong team. The district court used the example of the Civil War. That's right, but it robs the exception of any meaning, Your Honor. How so? Because an event becomes... It's still definable, isn't it? Not really. You don't think the Civil War, would you rather I refer to it as the recent unpleasantness, perhaps? No, but being able to call it something. As I said in my brief, Your Honor, the Cretaceous Era is also called an event. And so everything that happened after the Cretaceous Era would be a single event. Isn't your definition really limiting? Not at all, Your Honor. Limiting how? Well, in that, I mean, it's hardly going to catch anything, right? You're talking about a very singular, one-time deal. That's the way you'd like to... I mean, in this case, is it a breeze that came by and blew red mud? Is that what the event was? Well, I will say this, and I know that you want to stick... Is every breeze a new event? I know that you want to stick to the pure wording, but I will tell you that in 2005, when this was passed, they attempted to, the minority attempted to have the statute amended to add, particularly to add continuing environmental thwarts. And when they didn't put it in, the minority railed mightily at 89 of the Senate report, saying that failing to carve out an exception to S-5 to protect the environment, for just what Your Honor is discussing... But that's sort of like... If legislative history is once removed, what you're talking about is at least two or three times removed. And the thing that you want to talk about, legislative history, although it supports what you say, the trouble is this legislative history came out, as legislative history sometimes does, a good two weeks after the vote was taken. I agree, Your Honor. And so the argument then becomes, it was... Some would say, you know, who are skeptical, is that it was put together to keep at least one person, usually the chair of a committee, happy with regard to what the interpretation would be, but it's not even necessarily the committee's view and certainly not the Congress's view. So what's beaten to us as federal judges is that you look to the text first and you exhaust everything you can with regard to the text before you even begin to consider whether you should look at something else. I couldn't agree more, Your Honor. And as I say, every court that has ever examined the concept of event, if you leave out this subtext about environmental torts, has always said an event is singular. The definition I gave you... I know that your law court went on the Internet, but the definition I gave you, quoted from an asbestos case, was that an event was a singular thing, something that happens at a discrete point in time. Doesn't Congress know how to define more narrowly than the term event a temporally delimited period of time? Well, they did, Your Honor. They said an event. An event. An means one. One event. Or occurrence. Yes, we had a civil war, too. Well, I understand that, Your Honor, but that brings us back to the Cretaceous problem, which is that if you define event as being a broad thing, then this exception has no meaning. It simply disappears into the Ellen case that was discussed and agreed. Let's go back to Judge Ambrose's question at the start. And, in fact, isn't there really more than just policy behind the point that the statute contemplates that a state, in this case a territory, may be more suited for the action? Isn't that what, and specifically what I'm looking at right now, is 1132D11BiR1. It's so awkward to have to deal with. The first exception. But doesn't that clearly, doesn't the mass action exclusion clearly contemplate that here we have a preference for an event or occurrence in the state in which the action was filed and that allegedly resulted in injuries in that state or in states contiguous to that state? Absolutely, Your Honor. The point, though, is that the phrase in a state and the injuries that occur in a state defines the stateness of it, defines that state interest. If Congress had simply wanted to limit things down to things that occurred in a state, why put an event or occurrence? Why not put a tort? Does that argument help you or hurt you? No, that helps me a lot. Because if they hadn't specified an event or occurrence, in other words, you had two different groups of people fighting with each other. One group wanted to open up the state courts to environmental torts. Another group wanted to close it down. And so they came to a compromise. What was the compromise? Well, limit things with regard to things that happened within a state and which had effects in a state. But the other side said, yeah, but we don't want every single thing going in there. In the 2003 legislative history, and I know you don't want me near the legislative history, it specifically said, singular event, nothing more. When this thing got moved, and this is after the vote, when it got moved to the Senate in 2005, when it got moved to the committee, after the vote was taken, they changed that express language. And when they changed that express language, the minority who tried to get the single event thing taken out went crazy. So everybody knew what the rules were. The rules were that, on the one hand, you have a state, an effects in a state, but the other side got something back. What did they get back? They got back that this was limited to... Legislative horse trading is not what we're about. I thought we started out talking about plain language. You've argued legislative history more than you have plain facts. When you get back up on rebuttal, the question that I'd like you to deal with first is, assuming that you could have a continuing event or occurrence, how do you deal with the fact that you have two different emissions, one of the bauxite and the one of the friable asbestos, and how those separate emissions can constitute an event or occurrence? Thank you, Your Honor. Thank you. Ms. Nichols? Good afternoon, and may it please the Court. The section that we're talking about... You better announce your name for the record. Leah Nichols, thank you. The text we're talking about, we are talking about an event or occurrence that involves local events and local injuries to the plaintiffs. Now, the statute itself doesn't define the words event, and it doesn't define the word occurrence, but as has already been discussed today, the purpose of this section of D11-B21 is about keeping local controversies in local court. And so we have what I think is a fairly broad phrase, this event or occurrence, and... If you were writing this opinion, when does a toxic spill go from being a single event to a multiple event? It goes to being multiple events, Your Honor, when there's some sort of intervening break in the chain of causation, some sort of intervening event that dramatically changes the landscape. Was there an intervening event here? No, Your Honor. Not from the time that SCRG purchased the property and continued to hold it and continues to own it through the time that the complaint was filed. You have pled a series of discrete types of activity over a period of time. Have you not? We have not, Your Honor. If you look at the complaint, if you look at paragraph 471, which is on page 51 of the joint appendix... This is in paragraph 471. Near the bottom it says, this dispersion of toxic materials occurred continuously from the same source and they did not abate it. And so that in paragraph 471 alleges a continuous occurrence as well... So you ascribe to what Judge Bartle described as the continuing tort theory. Right, and I think that's reasonable. I think it's reasonable to look at continuing torts in this context and to look at how we figure out how that's different from another tort. Now looking at how to define these terms, event and occurrence, there's not a lot of case law that defines the word event, but there is a large body of... There's no federal appellate authority, is there? Right, there's only one federal appellate authority dealing with this... The Nevada case? Yeah, the Nevada case out of the Ninth Circuit is the only federal court of appeals opinion that deals with this section. Deals with it. Right, and the facts there are pretty different from the facts here, and so it's not really helpful, I think, one way or the other. But the word occurrence, there's actually a quite well-developed body of law with regard to the word occurrence in the insurance liability context. And there, the word occurrence is consistently, unanimously defined as something that can be ongoing or recurring or repeated over a period of time. And we've cited to a number of those cases from this court that deal with it in that context. And in fact, if you look up occurrence in Black's Law Dictionary, it describes it as, quote, something that happens or takes place specifically an accident, event, or continuing condition that results in personal injury or property damage. And what we've alleged here is a continuing condition that's been going on from the time that SCRG purchased the property until the time... Well, until through the present, and certainly until the time that the complaint was filed. At the beginning of the argument, Judge Amber, you expressed a concern about both the emissions of the red dust, which is the industrial byproduct, which in this case is actually mixed with a lot of other materials, as well as the asbestos. We contend that that's just a single event or occurrence. And the reason why in this case is because it's not as if SCRG is engaging in two different processes or two different manufacturing processes that resulted in two different emissions. They bought the property. At the time that they bought the property, it was no longer being used as a refinery. It was just an unused refinery. And it didn't do anything to abate the emissions coming out of that property. And because of the nature of the claims here, although there's more than one material at issue, they come out of the same occurrence using that same definition that's out of that well-established body of law. But SCRG has argued, as I understand it, that these events, plural, included erosion of red mud from the piles, disbursement in the wind of the red dust, failure to remove and to remediate asbestos and proper storage of red dust, coal dust and other particulates, and the action to increase the disbursement of the toxic substances. Here, though, what it all comes down to, what all of that comes down to, Your Honor, is that SCRG failed to prevent these materials from leaving the property, from being dispersed from the property. They've done nothing. And it's hard to see how the fact that they've sensibly break that down into one more event or occurrence. So you could say, well, they failed to deal with the erosion, but they also failed to deal with these mudslides. And once you get into that, it's hard to draw the line there as to which is an event or occurrence. It's just not sensible. And so here, because the underlying conduct at issue is really their failure to do anything with anything on this site, that that's a single event or occurrence as alleged in the complaint. The district court, I think, found that Hurricane Marilyn, which struck in 1995, began the now, I guess, continuous dispersion of the red mud, of which you complain. I mean, would it be fair to say that Hurricane Marilyn was an event or occurrence for purposes of this section? If a hurricane had struck and caused significant changes to the location, so, for example, tore up a building or something like that, or changed the landscape and caused erosion, then, yes, that could be an event or occurrence. Can we decide this issue on the plain text of the statute? Yes, Your Honor, absolutely. So that we would not have to resort to that ex post effort by the Senate? Exactly, Your Honor. Absolutely. At least somebody in the Senate. Yes. Exactly, exactly. Maybe a staffer? Yes. This case can absolutely be decided on the plain text of the statute, and, again, as is already noted, it makes sense to look at occurrence as it's used in these insurance liability contexts. I mean, those policies are often written to deal with suits for toxic torts, and so I think that's an appropriate place to look. Would you agree that, at this point, it's your burden to prove that the event exception applies? No, Your Honor. We dispute that it's an exception versus just part of the definition of a removable mass action, but that aside, it is... Here, we're looking at the complaint and do the allegations in the complaint constitute a local event or occurrence? And so here, as far as who ultimately bears the burden, as Judge Amber earlier said, it's really a statutory interpretation question. The question I would ask your opponent to consider, I'm going to ask of you, how do we consider the emission of two different types of toxic chemicals to be a single event or occurrence under the language of CAFA? In this case, Your Honor, the allegation comes down to SCRG's failure to do anything to prevent particles from this same site from going elsewhere. When it bought the site, it was defunct. It was not an operational refinery. It's not as if it had one process over in, you know, Part Area 1 doing one thing and another process in Part B or in Part 2 where the emissions and the facts are going to be very different. But at the very least, aren't there two different occurrences here? One bauxite, one asbestos? No, Your Honor. It's one occurrence because it's all coming out of their failure to do anything with this site. They purchased the site. All of these things were already being emitted from the site at the time of the purchase and they did nothing about any of it. In the process of what went on at the site, you're saying that what was emitted was always at the same instant, bauxite and asbestos? Yes. Since 2002, both of them were being emitted. To our knowledge, yes. Now, it may be that, you know, the merits haven't been determined yet, but to our knowledge and the allegations in the complaint are that for, I believe it says, for at least 10 years, asbestos, friable asbestos, has been leaving the property. So all of these things have been going on for the entirety of the time covered by the complaint were occurring at the time the SCRG bought the property. And again, they're not doing any manufacturing or anything on this property. They just haven't done anything to remediate it. Is there any difference between an event or an occurrence? Or are they just synonyms? Your Honor, there's certainly an overlap in the definition between them. The fact that Congress used both indicates that maybe there's some space between it. To the extent... Clearly indicates there is, doesn't it? I mean, if we apply canons of statutory construction, we can't assume that it's... What they have added as a disjunctive is just superfluous or redundant, can we? Yes, Your Honor. We can assume that they are... There is an overlap, certainly, but to the extent that they're different, occurrence is something that's been defined by these liability contracts. And so sometimes event, sometimes event, and I think the SCRG has pointed to one dictionary definition, for example, that defines event as a more discreet, as something more discreet. But there's nothing, and SCRG has provided no example of a definition of occurrence that's that narrow. And both sides have argued this case based on how the district court adjudicated it, which is defining and interpreting the term event, am I correct? Yes, the district court defined and interpreted event, but the statute does say event or occurrence. I know what the statute says, but my point is in terms of arguments that we can and should consider, neither of you have argued that this is an occurrence of the statutory term as opposed to an event, have you? We certainly have argued that here, Your Honor, in the briefing, absolutely, that we have argued that it's an occurrence. All right. So to the extent that these terms are somewhat, are broad and difficult to define, it is important to keep in mind the purpose of CAFA, which CAFA has not one but two provisions that aim to keep local controversies in local courts. All of the events here, all the relevant events occurred on the island. This is a case brought by local islanders for damages. I just know that about, to the extent we can consider purpose, everything flows in your direction. There's no doubt about that. The hangup is the text of the statute. Certainly, Your Honor. The one that I quoted earlier and that the site was given by Judge Smith. Is there anything we can look to in the structure of the statute, aside from just the language of event or occurrence, that would support your position? With regard to, I think there, yes, and that's that the, there are two provisions that attempt to ensure to keep local events or occurrences in state court. There's the one that we've been talking about, and then there's also the D4 exception, which applies to both class actions and mass actions, that says that where a defendant and two-thirds of the plaintiffs are citizens of the same state, that those cases should also be in state court. And so to the extent that the rest of the statute has some weight or has some influence on how we define event or occurrence, it makes sense to think of things as, you know, as that this is a local event or occurrence that the statute intends to keep in state court. Finally, just a quick note with regard to, we are arguing about here what the claims and allegations are in the complaint. There has not even been an answer to the complaint at this stage. There's been no discovery, and there's virtually no record in this case. And so I believe in the reply brief, SCRG raised a lot of facts that aren't in the record. But here, again, the focus is what's in the complaint. That's all we have at this stage. And the district court certainly acknowledged that all that we're dealing with and all that he was dealing with are allegations. Yes, that's correct, Your Honor. So finally, just to say that if this court reverses the district court on that we've alleged an event or occurrence that's local, in the alternative, we ask that on remand, that you remand with instructions to permit us to get discovery on the question of whether or not SCRG is a citizen of the Virgin Islands. Didn't Judge Bartle make a finding of fact on that matter that we would have to determine is clearly erroneous? How is that not a finding of fact? Your Honor, frankly, it's dicta because he didn't need to find that to reach his conclusion. How do you make a finding of fact that's dicta? It didn't need to be decided to... It was something that was in dispute in the district court. It didn't need to be decided for Judge Bartle to reach the conclusion that the court did. District judges reach alternative conclusions all the time. It may depend on the case, on the moment, on the style of the judge, but often they will do so in an effort to make things easier for the court of appeals. How does that make it any less of a finding of fact? Your Honor, I see that I'm out of time. No, go right ahead. Thank you. To the extent of finding of fact, the court didn't actually deal with the D4 question. So there is no finding with regard to whether the D4 exception fits. We requested discovery below, and for good reason Judge Bartle didn't need to grant that request. You also didn't cross appeal on that either, right? We couldn't have, Your Honor. And the reason we couldn't have is because we got 100% of the relief that we asked for below, which was a remand to the state court, and we ask that you affirm. Okay, thank you very much, Mr. Hartman. Let me ask you at the outset, if we ruled in your favor and we reversed, what do you think the consequences would be for the next case? I mean, I almost concede the headlines here that, you know, this court of appeals says that an island can't qualify for the in-state exception. I mean, those seem to be the consequences. It would be absurd to say otherwise. If they did so, Your Honor, I think calling it the in-state exception would be the illogical part of the argument. The name of the exception is the single occurrence exception. In other words... Although it seems like everybody refers to it as the in-state exception. Well, except it's not really. What it really is is it says an event or occurrence in a state where results occur in a state. If you take, for instance... My question to you is, if we were to rule in your favor, what do you think the consequences would be for future cases? Because if St. Croix doesn't qualify for the in-state exception, other than maybe some island in Hawaii, what does? Your Honor, we coded to the Armstead case, which wasn't in St. Croix. It was in Louisiana. And there were issues that crossed the state line into Texas. Was the negligence there, so on and so forth? Were decisions made there? And what the court said was, look, you focus on the event. Where did the event happen? What was the event? And the point being that this isn't a statute. The newspaper headline shouldn't be about the in-state exception. It should say CAFA was specifically written, the mass action in CAFA was specifically written, to accept one very narrow range of things. It's where there were single catastrophic events. And they just find them. Fires, explosions, spills. That's all that was ever talked about with regard to the exception. Let me leave you with this. When former Justice Alito was on our court, he was involved. He wrote in a case called Smith, which went in bank. It was a Social Security case. And basically he said that if the text of a statute is completely absurd in the circumstances that now exist, you don't allow the absurdity, or you do, basically what you say is you don't follow the text. And now he's still, he's given speeches where he has said that when he was, that was reversed by the Supreme Court, where you do follow the text, can't be right. Supreme Court can't be, certainly is never right all the time because they weren't right in that case. But the question here is, it seems as if to rule in your favor would create something that is so illogical that it could be deemed to be absurd. It would almost be that you don't have the in-state exception. I guess maybe the only argument you have is that, yes, you do have the in-state exception, provided you have a single event of recurrence. Well, I think Your Honor said something of the same about absurdity in Abramson recently, that CAFA should be left alone to its language unless the result is basically absurd. And it's not absurd to think, especially in light of what Congress talked about, it's not absurd to think that what they were trying to do was create a very, very narrow exception when you had a very specific type of event. That kind of event not being a 40-year spill, it being where something goes boom. Remember, this was an exception to a bill that intended to broadly widen the jurisdiction of the federal courts with regard to these. So if something doesn't go boom, but there is an admission for one week, over the course of one week, that's not a... That's where the real issue comes down. I mean, the real trick here is, what happens when you have something that's so close on it that it could go either way? Well, that's why God created judges. You know, I think... Now I know. First he created judges, then in the order of evolution or in the order of creation, he created the ape, which tells you something about where we stand. But I don't think it's profound to say that a judge given a good set of rules on what constitutes an event can't draw that line. As I said, I don't think that exists here because counsel says SCRG didn't do anything, but as I pointed out in the brief, we sued someone and won a $6 million judgment for a bulldozer that raked up Area A and spilled stuff all over the place, and we couldn't recover for it because of negligence there. I just don't think that it's that profound a problem. Thank you. Thank you to both counsel. Thank you, Your Honor. We'll take the matter under advisement. Thank you. Please rise.